Ashmead and others *v.* Kellogg.

————•◄❖►•————

## ASHMEAD AND OTHERS *vs.* KELLOGG.

Where personal property, mortgaged to secure the payment of a debt payable on demand, is left in the possession of the mortgagee, an unqualified sale by him, not merely of his interest in the equity of redemption, but of the entire property, for his own benefit, is a wrongful conversion, for which trover will lie. *Oviatt* v. *Sage*, 7 Conn. R., 95, commented on.

A mortgage of a vessel, by the defendant to the plaintiffs, contained a condition that, if the defendant should pay the plaintiffs $3,000, with interest, without specifying any particular time for such payment, such mortgage should be void, and also a stipulation, that, until default should be made in the payment thereof, the defendant should remain in the possession and enjoyment of the property mortgaged, and that, in case of such default, it should be lawful for the plaintiffs to take possession, and dispose of it, paying said sum from the proceeds, and rendering to the defendant the surplus, if any. The vessel being in the possession of the defendant was sold by him, as unencumbered, for his own use and benefit, said mortgage debt remaining unpaid. In an action of trover, for said vessel, brought against the mortgagor, by the mortgagees, it was held, 1. That the money mentioned in such condition, was not payable immediately, but on request, and, therefore, that there was no breach of the stipulation for the continued possession and use of the property, by the defendant, and the resumption of it, by the plaintiffs, until after a demand and non-payment thereon, or some act equivalent thereto. 2. That such stipulation was not a mere covenant, the only remedy for a violation of which was an action of covenant. 3. That it was not a mere bailment by the mortgagee of the property, at the will of either of the parties. 4. That such stipulation in effect was equivalent to a grant or demise of the property to the mortgagor, for an indefinite time, defeasible on the payment of the money upon request, and that a sale of the entire property, by the mortgagor, for his own benefit, was a forfeiture of the right of possession and vested the same in the mortgagees, and constituted a sufficient title to enable the latter to maintain trover for said vessel immediately on such sale.

THIS was an action of trover, for a schooner, called the General Morgan, tried by the jury, at the term of the superior court for Hartford county, holden in September, 1853.

On the trial, the plaintiffs gave in evidence a mortgage deed of said schooner, admitted to have been executed by the defendant, and delivered to the plaintiffs, to which the following condition and stipulations were annexed: "If I shall and do well and truly pay unto the said parties of the second part, their executors, administrators, or assigns, the just and full sum of three thousand dollars, lawful money of the United States of America, with interest thereon, at the rate of seven *per centum per annum*, payable yearly, (it being hereby understood and agreed by and between the parties hereto, that, in case of loss or damage sustained by said vessel by reason of the dangers of the sea, then the said parties of the second part are hereby authorized to receive, from the insurance companies in which said vessel is insured, a proportional amount of the said $3,000 now due, in order to secure this mortgage,) then these presents shall be void. And I, the said party of the first part, for myself, my executors, administrators and assigns, do covenant and agree, to and with the said parties of the second part, their executors, administrators and assigns, that, in case default shall be made in payment of the said sum above mentioned, then it shall and may be lawful for, and I, the said party of the first part, do hereby authorize and empower, the said parties of the second part, their executors, administrators and assigns, with the aid and assistance of any person or persons, to enter my dwelling-house, store, and other premises, and such other place or places as the said goods or chattels are or may be placed, and take and carry away the said goods and chattels, and to sell and dispose of the same, for the best price they can obtain; and out of the money arising therefrom, to retain and pay the said sum above mentioned, and all charges touching the same, rendering the overplus (if any) unto me or my executors, administrators, or assigns. And until default be

made in the payment of the said sum of money, I am to remain and continue in the quiet and peaceable possession of the said goods and chattels, and the full and free enjoyment of the same. In witness whereof," &c.

It was proved that, at the time, or just previous to the execution and delivery of said mortgage deed, the defendant received a bill of sale of said vessel, from the builder and owner, and thereby acquired a legal title; that the vessel was purchased for $11,000, which was paid by a company of persons, embracing the plaintiffs, the defendant and others, united as a corporate body, under the laws of this state, by the name of the Connecticut Mining and Trading Company; that said vessel was contracted for by said company, and purchased for the use of said company, many of its members being, at the time, with their officers, and the defendant, their president, in the city of New York, ready to sail in said vessel, for California; that the title of said vessel was registered in the custom-house of New York, in the name of said Kellogg, (who swore, that he was owner thereof,) because the custom-house could not admit the title or ownership of a vessel to be in an incorporated company.

It was further proved, that said company had contracted debts, in purchasing goods, to a considerable amount, and that there were difficulties in getting the vessel away from New York, until said creditors were satisfied; whereupon it was agreed, between the plaintiffs on the one part, and said president, directors and officers and several others on the other part, stockholders in said company, who had full authority therefor, that, if the plaintiffs would advance the sum of $3,000, to enable the company to proceed on their voyage, they should be secured upon said vessel, by the mortgage aforesaid, to which they agreed; and said mortgage was accordingly executed for said purpose, and the plaintiffs advanced said $3,000, as expressed in the condition and upon the terms stated in said deed.

It further appeared, that, immediately after the execution

of said mortgage deed, the defendant and others, the directors and members of said company, sailed in said vessel from New York to California, the vessel being under the direction and control of the company and the captain, who was appointed by said company. Said vessel reached California, in the early part of August following, where said company proceeded and continued to use said vessel, in one or more of the rivers of that state, until in the latter part of the month of November following, when the defendant purchased said vessel of said company, and the entire interest in said vessel, for the sum of $12,000, which, the defendant claimed, was duly paid to said company.

It was further proved, that the defendant, upon said sale to him, took possession of the vessel, as his entire property, and for a short time used the same, appropriating it to his exclusive benefit, and thereafter made sale of the entire interest of said vessel, as unincumbered, to one Brannon, for the sum of $14,000, which the defendant has retained as his own.

The defendant further claimed, that all he did in New York and in California, touching said vessel and the title and use of the same, up to the time of his purchase of the same, he did in the character of a trustee for said company, and therefore, in buying said property for himself, and in using and selling the same, he was not guilty of any conversion of said vessel, and was not liable in the present action, and requested the court to instruct the jury, that, upon the facts above admitted, and claimed to be proved by the defendant, he could not be liable. The court did not so instruct the jury, but informed them, that, upon the facts, if they were true, as admitted, the defendant had been guilty of a conversion, and was liable in said action, unless there was something more in the case.

The defendant further claimed, that he had paid the amount of said mortgage debt, to the plaintiffs; who denied ever having received the same.

The jury having returned a verdict for the plaintiffs, the defendant moved for a new trial.

*Welles* and *Chapman,* in support of the motion, contended,

1. That, upon the facts claimed by the defendant to have been proved, upon the trial, the action of trover could not be maintained; because, the possession of the defendant was lawful, and according to the terms of the mortgage; and this possession had not been terminated, by a demand of the mortgage debt and a refusal by the defendant.

2. That the sale of the vessel, by the defendant, was not a conversion. To constitute this, there must be a destruction of the plaintiffs' property, and neither the defendant nor the company could destroy the plaintiffs' title, by a sale. *Oviatt* v. *Sage,* 7 Conn. R., 95. 4 East, 110.

*Hungerford* and *Fellowes,* contra, contended,

1. That the plaintiffs had rightfully recovered a judgment, for the amount of their debt and interest, secured by a mortgage upon the vessel, if they had a right to recover at all. *Chamberlain* v. *Shaw,* 18 Pick., 278. *White* v. *Webb,* 15 Conn. R., 302.

2. That the defendant was liable for a conversion, by using and selling the vessel in the manner he did. *Ripley* v. *Dolbear,* 6 Shep., 382. *Whipple* v. *Gilpatrick,* 1 App., 427. *Grant* v. *King,* 14 Verm., 367. *Barry* v. *Bennet,* 7 Met., 354. *White* v. *Webb,* 15 Conn. R., 302. *White* v. *Phelps,* 12 N. H., 382. *Murray* v. *Burling,* 10 Johns., 172.

STORRS, J. On the facts appearing in this case, two points have been presented. First, whether the plaintiffs had a sufficient title to the property in question, to maintain this action; and secondly, whether there was a wrongful conversion of it, by the defendant, to his own use.

Respecting the latter of these questions, it is too obvious to require argument, that, if the plaintiffs had a sufficient title

to the property, when it was sold by the defendant, such sale constituted a wrongful conversion of it, by the latter. It was an unauthorized deprivation of the plaintiffs of their property, and a direct ·appropriation of it, by the defendant, to his own use.   It is true, as stated by the defendant, that the plaintiffs did not, by such sale, lose their title to the property, and might have reclaimed it, if they had elected to do so, in the hands of the purchaser from the defendant, or those into whose hands it might afterwards come ; but they were not bound to do this, and had a right to resort immediately to the defendant, by whose means they had been wrongfully deprived of it.   It is scarcely necessary to say, that the wrongful conversion of property, which is sufficient to sustain the action of trover, does not necessarily imply its destruction or even its removal, so that the owner cannot retake it.   If the defendant had merely disposed of his own interest in the property, and sold it, subject to the encumbrance of the mortgage of it to the plaintiffs, there would have been no interference with the rights of the plaintiffs: but here the defendant assumed to sell the entire vessel, as unincumbered, and retained the proceeds as his own, which was a clear invasion of the rights of the plaintiffs, and a wrongful conversion of their property, by the defendant, to his own use. The defendant has endeavored to assimilate the present to the case of a sale, by one tenant in common, of personal property, of not only his own share, but also that of his co-tenants, without their authority : in which case it is claimed, on the authority of *Oviatt* v. *Sage*, 7 Conn. R., 95, that, in order to constitute a conversion of the property, there must be a destruction of it, and that such sale does not amount to a destruction of it.   That case, however, is not applicable to the present.   It did not necessarily involve the enquiry, whether such a sale would be equivalent to the destruction of the share of the co-tenants, and therefore constitute a conversion of it, and it may well be doubted whether the court intended to express an opinion that it would not be.   It

may be remarked, that the cases elsewhere adopt the principle, that a sale of the entire property, by one tenant in common, amounts to the conversion of the interest of his co-tenants. But, whatever may be the doctrine, in regard to the effect of a sale by a tenant in common, of the whole of the common property, it is sufficient to say, that there is no resemblance or analogy between such a case and the present. There was no common or joint interest in the property here in question, between the plaintiffs and the defendant. The interest of the plaintiffs was that of mortgagees, and that of the defendant, of a mortgagor; and the interest of the former was wholly distinct, and different from, that of the latter. There was no connection between them, in this respect.

The remaining question is, whether the plaintiffs, at the time of the conversion, had a sufficient title to the property, to maintain this action. It is claimed by them, that they then had a present or immediate right of possession to the property; and it is justly conceded, that such a right constitutes a sufficient title. Whether the plaintiffs, then, had such a title, depends on the construction and effect of the condition of the mortgage to them from the defendant: and the question is, how far, by the terms of that condition, the plaintiffs were divested of the absolute and unqualified right of possession, to which they would, but for that condition, have been entitled, by virtue of the general ownership of the property conveyed to them by the mortgage. That condition is, that the defendant should pay to the plaintiffs, the sum therein mentioned, with interest, without specifying any particular time for the payment of the same, and provides further, that, until default should be made in the payment thereof, the defendant should remain in the quiet and peaceable possession, and the full and free enjoyment of the property mortgaged, and that, in case of such default, it should be lawful for the plaintiffs to take possession of it, and dispose of it, paying said sum from the avails, and rendering the surplus, if any, to the defendant. The plaintiffs

claim, that, as no time is specified for the payment of said sum, it was payable immediately on the execution of the mortgage, and that, it not being then paid, there was a breach of the condition, immediately, which terminated the defendant's right to the possession of the property. We do not accede to this claim, because such a construction would be manifestly unreasonable and inconsistent with the intention of the parties, as evinced by the terms of the condition, the provision respecting the continued possession and use of the property, by the defendant, and the resumption of it by the plaintiffs; but we consider the sum to be payable, on request, and that, until such request, there would be no such default as was contemplated, and consequently, .no breach of the condition, or forfeiture of the defendant's right of possession. Nor do we view the stipulation in the light of a mere covenant, on the part of the defendant, for the breach of which the remedy of the plaintiffs would be by an action against the defendant. Neither do we think that the effect of that stipulation was to create abatement by the plaintiffs, to the defendant, of the property, during the will of either of them; although it was indeed competent for the plaintiffs, to request payment of the sum, which the mortgage was given to secure, at any time when they should choose, and on non-payment, the condition would be broken, and the possessory right of the plaintiffs to the property, would thereupon immediately revert to the plaintiffs : but this would be so, rather in consequence of the non-payment of the money, than of a direct determination, by an expression of the will of the plaintiffs, of a term for which the defendant held the use of the property, and the right of the plaintiffs to the possession might be defeated by the defendant's compliance with the condition, in paying said sum, on such request. But we consider the effect of that stipulation to be the same as if the plaintiffs had made a grant or demise of the property to the defendant, until a default in the payment of said sum on the plaintiffs' request, and defeasible on such default,

and which would, of course, vest a right to the possession of the property in the defendant, during said period, and such right would continue, by virtue of said agreement, until it should be defeated by a breach of said condition, by the defendant, or otherwise forfeited by him. During said term, he would have a right to use the property in the manner, and for the purposes, for which such use was granted. But he would have no right to appropriate it for another and different use, and if he should do so, we think that such appropriation would amount to a wrongful conversion of it, which would deprive him of the right of possession conferred by the stipulation in the condition of the mortgage, and revest it in the plaintiffs. The plaintiffs claim, that the sale of the property, by the defendant, in this instance, constituted such a misappropriation and conversion, and we are of that opinion. It could not be doubted, that a destruction of it by the defendant, during the limited period during which he was entitled to its use, would be a conversion of it, for which the plaintiffs might immediately maintain an action of trover, and we think, that a sale was equivalent to a destruction of it, as between these parties. It may indeed, after such sale, have remained in specie, but it is not for the defendant to insist, that the plaintiffs should follow it, in the hands of the purchaser. The plaintiffs may treat it as if it were lost or destroyed. The sale of it, moreover, by the defendant, was an act of disloyalty to the plaintiffs, and a disclaimer, by him, of their title, and of his holding it under them, and should, in reason and justice, be attended with the same effect of forfeiting his interest in it, as a tenant or lessee, as would follow a similar act of disclaimer or renunciation, by a lessee of real estate. The views which we have expressed, as to the effect of the sale of the property, are fully sustained both by the American and English authorities. See *Fenn et al.* v. *Bittlestone et al.*, 8 Eng. Law & Eq. R., 482, and cases cited. *White* v. *Phelps*, 12 N. H. R., 382. 14 Verm. R., 367, and the cases cited by the plaintiff.

We think, therefore, that a new trial should not be granted.

In this opinion, the other judges concurred, except ELLS-WORTH, J., who was disqualified.

New trial not to be granted.