(Decided February 16th, 1859.)

---

## CUMBERLAND COAL AND IRON COMPANY and JONATHAN W. MAGRUDER, *vs.* MARGARET TILGHMAN.

In Maryland the action of replevin is most generally resorted to, for the
purpose of trying the right of *possession at the time the writ issued*, and
not to determine necessarily the *absolute* title to the property for all
time.

Whoever is entitled to the possession at the time the writ issued, may
maintain or defeat the action of replevin, and his title to *damages* must
be *confined* to the extent of the interference with that possession.

In an action of replevin, which was tried on issues to the pleas of *non
cepit* and property in the defendant, the verdict and judgment on both
issues were in favor of the defendant, who then brought suit on the re-
plevin bond for damages.   HELD:

1st. That the defendant, in the suit on the bond, could not show, in *miti-
gation* of damages, that the title to the property was in himself, for
this was decided in the replevin suit.

2nd. But he could show that, although the defendant in the replevin suit
had title to the property at the time the judgment was rendered in his
favor, yet that title was but of short duration, and terminated by con-
tract in a short time after that judgment.

In an action for damages on a replevin bond, it was *admitted*, that on the
trial of the replevin suit, the plaintiff offered evidence to show *title* in
himself, and the defendant offered evidence of *title* in himself, and that
the verdict was found in favor of the defendant, on the issue joined.
HELD:

Cumberland Coal & Iron Co., *et al.*, *vs.* Tilghman.

1st. That this *admission* relieves the plaintiff in the action on the bond, from either pleading the record in the replevin suit, specially as an estoppel, or the jury from finding its existence on the testimony, for what is admitted need not be proved.

2nd. The same word, "*title*," having been used both in this admission, and in the plaintiff's *offer of evidence* in the suit on the bond, it must be understood as importing the same thing, and whatever *title* was designed to be proved in the suit on the bond, must be considered as settled by the replevin suit.

Where the court below had granted an instruction, in regard to the standard of *damages*, it is no error for it to refuse another instruction, setting up another standard inconsistent with that established by the prayer already granted.

APPEAL from the Circuit Court for Allegany county.

This action was brought on the 11th of August 1857, by the appellee against the appellants upon a replevin bond.

On the 17th of July 1855, the Cumberland Coal and Iron Company sued out a writ of replevin, and gave the usual bond, with Jonathan W. Magruder as security on it, to Margaret Tilghman. In this replevin suit, the defendant, Margaret Tilghman, pleaded *non cepit* and property in herself, and the plaintiff, the Cumberland Coal and Iron Company, joined issue on the first plea, and to the second replied property in itself. At the trial both issues were found for the defendant, and judgment for the return of the property and for costs, was rendered on the 15th of April 1857. The property taken was a canal boat called "The Anna Woodward," which was replevied and delivered to the company on the day the writ of replevin was issued, and has remained in the company's possession to the time of the present suit.

In the present action the plaintiff, Margaret Tilghman, declared on the replevin bond above mentioned, assigning as breaches thereof, "that the said Cumberland Coal and Iron Company, did not prosecute the said writ of replevin with effect, against the plaintiff, and did not well and truly return and deliver unto the plaintiff the said property so replevied, and did not pay to the plaintiff the damages caused by the taking, use and detention of said canal boat from the plaintiff, and hath not paid the said costs." The defendants pleaded,

1st, general performance; 2nd, "that the plaintiff from the time of making of the writing obligatory aforesaid, hitherto hath not been damnified in respect of or by reason of any matter, cause or thing, in the condition of the writing obligatory aforesaid mentioned." On these pleas issues were joined.

*1st Exception.* The plaintiff to support the issue on her part joined, offered in evidence the replevin bond, the execution of which was admitted, and the record and docket entries in the replevin suit mentioned in the condition of the bond, and also gave evidence of the value of the boat at the time of the replevin. It was then admitted, that on the trial of said replevin suit, the plaintiff offered evidence *to show title in itself,* and the defendant offered evidence *of title in herself,* and that the verdict was found in favor of the defendant on the issues joined. The defendants then, to support the issues on their part joined, and for the purpose only of mitigating the damages in this case, offered to prove by competent and proper evidence, that at the time said boat was replevied *the title thereto was in the company,* and so continued in said company to the present time. To the admissibility of which evidence, the plaintiff, by her counsel, objected, upon the ground that the company was precluded by the verdict and judgment in the replevin suit, from showing any of the facts above offered to be proved; which objection the court (PERRY, J.,) sustained, and to this ruling the defendants excepted.

*2nd Exception.* The plaintiff, in addition to the evidence offered in the first exception, offered in evidence the depositions of Atkinson and Sprigg, which were used in the replevin suit, and proved by Robert S. McKaig, that he had testified in the replevin suit, that, in March 1854, he purchased the boat for Margaret Tilghman; that *after* the boat had been *delivered* to him by Sprigg, under the contract, he understood that the Cumberland Coal and Iron Company had a claim on the boat, and he and Sprigg called on Henderson the company's agent and had a conversation with him on the subject; that Henderson claimed there was still due by Sprigg to the company, on the sale of the boat to Sprigg by the company, $124 or $134; that Sprigg denied he owed any thing on the boat,

Cumberland Coal & Iron Co., *et al.*, *vs.* Tilghman.

but it was agreed, at that conversation, that Margaret Tilghman should keep the boat, and that witness, as her agent, should pay the company $100, part of the $124; and that Sprigg should pay the balance of the $124 out of the earnings of another boat, and this arrangement was made to discharge the boat for Miss Tilghman, who was to hold the boat as her own; and that witness paid the $100, by leaving that much of the freight of the first load of the boat thereafter in the hands of the company; and that Sprigg so paid the $24 to the company.

The defendants then offered to prove by Henderson and other competent witnesses, that the boat before and in the spring of 1854, was the property of the Cumberland Coal and Iron Company; and that in the spring of 1853 the company had made a contract with Sprigg, by which it was agreed he should take this boat and two others and run them on the canal in carrying coal for the company, and that the company, to pay for them, was to retain in its hands twenty cents per ton out of the freight money, as purchase money paid on the boats, and that the boats were to remain the property of the company till paid for; that Sprigg had a right by this contract to apply the twenty cents per ton earned by all the boats, to the payment of one, due regard being had to the condition of the others, and that the boat in question had been taken by Sprigg under this contract at $936,67, which was the principal sum, and that the twenty cents per ton were to be credited as earned, charging interest on the price of the boat from credit to credit until paid for in full, and that this boat was not paid for in the spring of 1854, and at the time of the alleged sale to McKaig; that Henderson never assented to a sale of the boat to McKaig by Sprigg, and that in a conversation had with McKaig and Sprigg, in the spring of 1854, at the place stated by them, he, Henderson, did not assent to such sale, but on the contrary communicated to McKaig the contract with Sprigg, and that the boat was not paid for, and that he would not consent to such sale to McKaig as the agent of the plaintiff; and also to prove that the amount due on the boat in the spring of 1854, at the time of said alleged sale, was,

after giving all credits to which Sprigg was entitled under his contract, $347,87; and that no such sum of $124 or $134, was ever agreed to or stated by Henderson, or in his presence, with McKaig or Sprigg; and that no such sum of $100, or any thing like it, was paid, nor any such sum of $24 paid by Sprigg. To the admissibility of which evidence and every part thereof, the plaintiff, by her counsel, objected, and stated as her objection, that the said evidence was inadmissible upon the ground, that the verdict and judgment in the replevin suit between the present plaintiff and one of the present defendants, the company, estopped the defendants from showing, even in this action, for any purpose, that the title to said property was in the company at the time of said trial, or give such evidence in mitigation of damages; which objection to said evidence and to every part thereof the court sustained, and refused to permit the defendants to offer said evidence or any part thereof to the jury, and to this ruling the defendants excepted.

*3rd Exception.* The defendants asked the court to instruct the jury, that if they find from the evidence that the company replevied the boat from the plaintiff, on the 17th of July 1855, and that a judgment on verdict in said replevin suit *de retorno habendo* was rendered, on the 14th of April 1857, in favor of the plaintiff, and that the company, upon the rendition of this judgment, returned the boat to the plaintiff, and if they further find, that the boat was in possession of the company from the time she was replevied until she was returned as aforesaid, and was used by the company in boating coal from Cumberland to Alexandria, and that she was built for that purpose, and would have been used by the plaintiff, in the same manner if she had not been replevied; and if they further find that it was more beneficial so to use the boat than to let her remain idle, and that the boat, even if she had remained in possession of the plaintiff during said period, would have deteriorated by natural decay and advance in age, over and above all other deterioration, that then the rule of damages in this case should be, the value of the boat at the time said replevin was executed, with the interest thereon from that time, reduced by

the amount of the value of the said boat when returned to the plaintiff, in so far as said last value was produced by other causes than natural decay and advance in age; and that the jury in estimating the difference between the value of the boat when replevied, and when returned, shall not take into their consideration the deterioration caused by such natural decay or advance in age, as would have accrued to said boat under all circumstances, and the costs of the replevin suit. This instruction the court refused to give, and to this ruling the defendants excepted.

In an exception, which was taken by the *plaintiff*, the court had, at the instance of the defendants, instructed the jury, "that the rule of damages in this suit, is the value of said boat at the time said replevin was executed, with the interest thereon from that time, reduced by the amount of the value of said boat when returned to the plaintiff, with the cost of the replevin suit," provided they found that the boat was replevied, and the judgment in the replevin suit, and the return of the boat to the plaintiff, as stated in the preceding prayer.

The verdict was in favor of the plaintiff for $836,78, damages and costs, and from the judgment thereon the defendants appealed.

The cause was argued before LE GRAND, C. J., TUCK and BARTOL, J.

*George A. Thruston and George A. Pearre,* for the appellants:

1st. That ordinarily, at least in an action upon a replevin bond, the defendants may show title in the defendant who replevied the property, in mitigation of damages. The object of the replevin bond is indemnity to the defendant, and all questions arising upon it should be determined by a due regard to that consideration. 6 *G. & J.*, 453, *Doogan vs. Tyson, et al.* 3 *G. & J.*, 247, *Belt vs. Worthington.* The damages recoverable, are only such as the defendant in replevin has personally suffered. 2 *Gill*, 216, *Walter vs. Warfield.* It is conceded, that if there had been no replication in

the replevin suit, of property in the plaintiff, the evidence would have been admissible for the purpose for which it was offered. But it is contended, that a verdict on this plea found for defendant, negatives title in the plaintiff in replevin, and operates as an estoppel against his setting up title in himself in a suit on the replevin bond. Even if it be admitted that this principle is correct, yet the *facts* necessary to constitute the estoppel, are to be found by the jury when offered in evidence. What facts, even upon this theory, was it necessary for the jury to find? The verity of every thing contained in the record of the replevin suit offered in evidence, viz., that there *was* a replevin suit, its subject matter, the pleadings, verdict, judgment, and the evidence offered in the case, if it assisted in creating the estoppel. When the facts are found by the jury, the court pronounces their effect or rather instructs the jury, if they believe such facts they constitute an estoppel. Now the court, in rejecting this testimony in the first exception, assumes the existence of the estoppel, by undertaking to decide for itself without the intervention of the jury, the existence of all the facts necessary to constitute the estoppel. The evidence is rejected because of the estoppel, and yet the very facts which were to create the estoppel, were offered in evidence to the jury, and were yet to be found by them.

2nd. The testimony offered in the first exception, independent of the above question, was admissible; because a verdict and judgment for the defendant in replevin, upon issue joined upon a replication by the plaintiff, of property in himself, does not settle the question of *title* against the plaintiff. Under such issue evidence of general ownership, unaccompanied by right to immediate possession, would be insufficient to obtain a verdict for the plaintiff. The mere right of bailee of the plaintiff would defeat the plaintiff. Right of possession alone will sustain, and want of it defeat the action. 1 *H. & J.*, 147, *Smith vs. Williamson*. 6 *H. & J.*, 471, *Cullum vs. Bevans*. There is no plea in replevin, that the defendant *at the time* of replevin was entitled to the possession, nor is there a replication that the plaintiff was entitled to possession. The plea of property in the defendant, or the replication of prop-

Cumberland Coal & Iron Co., et al., vs. Tilghman.

erty in the plaintiff, covers *the whole*. *"Property"* in such plea or replication does not mean *title* necessarily. It more properly means *right of possession*, because *title* without the *right of possession* will not sustain it, but *right of possession* without *title* will. The *proof* necessary in law to determine an issue, is the index of the meaning and extent of the issue; the *substance* of an issue is all that need be proved. 1 *Greenlf. on Ev.*, secs. 56, 528. The substance of an issue in replevin, even upon the replication of property in the plaintiff, is *the right of possession*. It does not, therefore, appear from the *record*, that the *title* was in issue and decided in the replevin suit, and this is essential to constitute the estoppel. 11 *G. & J.*, 173, 184, *Garrett vs. Johnson*. All that the record in the replevin suit is evidence of is, that the plaintiff at the time of the *taking* had not a *right to the possession* of the property. 15 *Mass.*, 310, *Gates vs. Gates*. 4 *Pick.*, 168, *Wheeler vs. Train*. 7 *Blakf.*, 298, *Wallace, et al., vs. Clark*. *Sedwick on Damages*, 503. This question was left open by the Court of Appeals, in *Belt vs. Worthington*, 3 *G. & J.*, 247, for there the plaintiff in replevin struck off his suit.

3rd. Under the first exception, we have endeavored to show that the evidence rejected was even admissible for the purpose of showing title in *the plaintiff* in the replevin suit, in mitigation of damages. The offer in the first exception is confined to proof of title in the *plaintiff* in replevin. In the *second exception* the proof is offered generally, and if admissible for any purpose was improperly rejected. The testimony was admissible to show that *the defendant* in replevin had *no title*. The issue in the replevin case, was upon the replication of the plaintiff in replevin—*property in it*. (6 *H. & J.*, 469, *Cullum vs. Bevans*.) If verdict is found on this issue for defendant, it only shows that the *plaintiff* had no property in it. It does not follow that the *defendant* had *title*. The defendant having possession at the time of replevin, (which is admitted by instituting the suit against him,) is *prima facie* owner, and entitled to maintain his possession until the plaintiff shows a better *title*. The *title* of the defendant is not, therefore, involved. 6 *H. & J.*, 469, *Cullum vs. Bevans*.

11　　v. 13.

11 *G. & J.*, 80, *Warfield vs. Walter.* The title of the defendant not being involved, the evidence was admissible as tending to show a want of title in her. But again, the plea of *non damnificatus* was not a proper plea to this action, for though the *object* of a replevin bond is *indemnity* to the defendant, yet it is not by its terms and conditions technically a bond *for indemnity*, and the plea of *non damnificatus* was, therefore, bad, (7 *Halsted*, 1, *Camp vs. Allen, et al.*; 5 *Johns.*, 42, *Woods vs. Rowan, et al.*;) but *issue was joined on it* and this lets in the proof.

· *Thomas J. McKaig* for the appellee argued:

1st. That as by the record in the replevin suit, the second issue in that action was "property in the company," and the appellants *admit*, that under that issue the company offered evidence of *title* in itself, and that the appellee offered evidence of *title* in herself, and that the verdict was found in favor of the appellee, upon the issues joined on the trial of the replevin suit as offered in evidence, the appellants were estopped to re try that issue by offering to prove property in the company.

2nd. That the admission *covers* the record as offered in evidence, the trial, the evidence offered by both parties, the issues, and the verdict, and is consequently an admission that the *title* to the boat was directly in issue.

3rd. The whole scope and object of the testimony in the second exception, was to prove property in the company. It was objected to and ruled out for the same reason that the testimony was refused in' the first exception. It was not offered to show a qualified property in Margaret Tilghman, but to show *title* in the company. No one denied that they could show that Margaret Tilghman had no property, or what property she had in the boat. 4 *Dana*, 251, *Hanson vs. Buckner.* 17 *Verm.*, 419, *Gray vs. Pingry.* 19 *Pick.*, 455, *Sprague vs. Waite.* 1 *Story's Rep.*, 474, *Mallet vs. Foxcroft.* 12 *Verm.*, 692, *Isaacs vs. Clark.* 1 *Greenlf. on Ev.*, secs. 522, 528. 4 *Phillip's Ev.*, (*Cowen & Hill's Notes*,) 20 to 25.

Cumberland Coal & Iron Co., *et al.*, *vs.* Tilghman.

4th. The rule of damages asked for in the appellants' prayer in the third exception is practically this: The jury will allow the company to run the boat and receive the profits, and charge the appellee with natural decay and subtract it from the original value of the boat. A new boat will last say six years—at the end of that time natural decay has destroyed it; the appellee would have thus lost the whole value of her boat, save six per cent. for six years on its original cost.

5th. No question was raised at the trial, of the right of the company to show that Margaret Tilghman had no property in the boat, or to show what property she had; on the contrary such right was distinctly conceded.

Le Grand, C. J., delivered the opinion of this court.

This is an action brought by the appellee against the appellants, on a replevin bond. The Cumberland Coal and Iron Company, sued out a writ of replevin, to obtain the possession of a canal boat which was claimed as her property by the appellee. To the action she pleaded *non cepit* and property in herself, to which the plaintiff in the replevin replied, property in itself, and joined issue on the plea of *non cepit*. At the trial, the verdict of the jury, and the judgment of the court, was in favor of the defendant, the present appellee, on both issues, and this action is brought by her to recover damages for her alleged injury.

The question which was most frequently presented in the discussion to the mind of the court was—what is the nature of the estoppel, if any, of a judgment for defendant in an action of replevin?

To our minds this question is involved in no mystery, but on the contrary is perfectly plain, when we remember the nature of the action of replevin in the State of Maryland. In this State the action is most *generally* resorted to, for the purpose of trying the right of *possession* at the time of the issuing of the writ, and not to determine necessarily the *absolute* title to the property for all time. And this being so, it follows, that if the plaintiff, at the time of the bringing of the suit, has the right to the *possession*, he must succeed; or, if he have it

not that his action must be defeated. Whoever is entitled to the possession, whatever may be his title in other respects, may maintain or defeat the action of replevin. His right to success in the action of replevin depending *entirely* on his right to possession, in reason, it follows, that his title to *damages* must be *confined* to the extent of the interference with that possession. If the right to the possession covers all time, or is limited to a determinate period, the damages will be accordingly graduated as the case may be.

In the case now before this court, the effort on the part of the defendants was, to show, as alleged by them, in *mitigation* of damages, title in the Cumberland Coal and Iron Company. Now this they could not do, because that question was decided in the replevin suit. It was, however, competent to them to show, that although the defendant in the replevin suit had title to the possession of the boat at the time of the judgment rendered in her favor, yet, that title was of but short duration, and terminated by contract in a short time after that judgment. No such evidence was offered to the court below; that is to say, the evidence of title of the company refused by the circuit court, was not confined to a period subsequent to the judgment, upon the ground, that at the time of replevin Miss Tilghman had only a limited interest in the boat, and that such was the finding of the jury; but included as well the very time wherein the judgment was rendered against it. It was urged at the bar, that it was competent to the defendants to offer evidence in this unrestricted form, in order that the jury might pass upon the facts constituting the estoppel. Whatever force under other circumstances would belong to the argument, none can attach to it in this case, and for the simple reason, that the fact which it is claimed ought to have been found by the jury was *admitted*. In the defendants first exception it is said, that "it was then admitted, that on the trial of said replevin suit, the plaintiff offered evidence to show title in itself; and the defendant offered evidence of title in herself, and that the verdict was found in favor of defendant on the issue joined." This admission relieved the plaintiff in this action, from either pleading the record specially, or, the

jury from finding its existence on the testimony.  That which is admitted need not be proved.

The same word, "title," which may mean an absolute interest or a qualified one, is used both in the agreement and in the offer of evidence contained in the exception, and must be understood as importing the same thing in both, and therefore, whatever title was designed to be proved in this, must be considered as having been settled in the other case.

The evidence offered in the second exception does not show, nor could the jury properly infer from it, that at the time of the purchase by Miss Tilghman, either she or her agent, McKaig, was aware of the state of facts testified to by the witness Henderson.   What he says he told Mr. McKaig, was communicated to the latter, *after* the sale was perfected and the boat delivered.   Anything he might say after that, could not affect her title.

The court did right in the rejection of the defendants' last prayer, in regard to the standard of damages.   The court had previously given an instruction on this subject, in its character, much more liberal than the defendants in law had a right to ask.   Inasmuch as that instruction is not before us on this appeal, we decline the examination of the principle contained in it.   To have given the instruction embraced in the last exception, would not only have been clearly erroneous, but, to give contradictory instructions on the same subject, a procedure wholly inadmissible.

                                                *Judgment affirmed.*