# HALLIE SHORTER

### *vs.*

## LEVIN S. DAIL.

*Mortgages of personal property : sale by mortgagor; replevin by mortgagee; right of possession.*

In equity a mortgage is regarded as a mere security for debt.
p. 108

The right of a plaintiff in replevin to recover depends upon his right to possession at the time his suit was instituted.

p. 104

The right of possession to personal property follows as an incident to the right of property, and unless a mortgage of such property expressly or impliedly provides that the possession shall remain in the mortgagor until a breach of the condition the right to the possession of the property is in the mortgagee.

p. 105

Where a mortgage of personal property reserves the right of possession to the mortgagor, he has no authority to make a sale and delivery of the property to a purchaser, and the possession so given to a purchaser would not be according to the terms of the reservation; and the fact that such sale and delivery was made before default would not effect the mortgagee's right to possession against the purchaser, or anyone wrongfully in possession of the property.        p. 106

Such right to possession is personal to the mortgagor.   p. 107

In such a case, a sale and delivery of the personal property by the mortgagor put an end to his right to possession, and as against the purchaser the right of possession vested in the mortgagee who had a right to replevin the same, although at the time of the institution of the suit no other default had occurred in the mortgage. p. 106

*Decided December 6th, 1913.*

Appeal from the Circuit Court for Dorchester County (Jones and Stanford, JJ.).

The facts are stated in the opinion of the Court.

The cause was argued before Boyd, C. J., Briscoe, Burke, Thomas, Pattison, Urner, Stockbridge and Constable, JJ.

*Emerson C. Harrington* and *V. Calvin Trice* filed a brief in behalf of the appellant.

*W. Laird Henry* filed a brief in behalf of the appellee.

Burke, J., delivered the opinion of the Court.

This is an appeal from a judgment entered against the defendant by the Circuit Court for Dorchester County in an action of replevin. The facts are undisputed, and the appeal presents for decision a single question of law.

The record shows that W. Herman Marshall was indebted to Levin S. Dail, the appellee, in the sum of $1,350.00, and that on the 27th day of April, 1912, for the purpose of securing the payment, with interest thereon payable semi-annually, one year from that date, he executed and delivered to Dail a chattel mortgage upon certain personal property therein described located on a farm in Dorchester County owned by the mortgagee. The mortgage was recorded within the period required by law among the mortgage records of that county,

and there is no question raised as to its validity. It was agreed between the mortgagor and the mortgagee that the property covered by the mortgage should be sold, at public sale. The arrangement with respect to that sale was this, according to the undisputed evidence of the plaintiff: "He said to me, 'look here, this stuff you have got a mortgage on, it's yours. Now, let me advertise it in my name. You can be there and get the papers.' He said: 'It will hurt my credit. I just want you to advertise it in my name as though it all belonged to me.' I said: 'I don't object to your advertising it in your name. I will be down there and get all the paper and money that will be realized on the property, and I at that time told him that he could not sell—neither sell anything nor trade anything off covered by the mortgage, because I had had trouble with a mortgagor once before, having traded something. It was thoroughly understood so.'" He further testified that his agreement was that the property was to be sold at public sale and he was to take the money and notes at the sale to protect himself.

Among the articles embraced in the mortgage was a grey mare, "Flirt," which was appraised at $200.00. The property was advertised for public sale in accordance with the agreement mentioned; but before the day of sale the mortgagor sold and delivered the mare to the appellant and left the county. This sale was made privately, without the authority of the mortgagee, and no part of the proceeds of the sale was paid to him. On the 18th of October, 1912, the appellee instituted an action of replevin to recover the possession of the mare from the purchaser, and she was taken under the writ and delivered to the plaintiff. At the time of the institution of the suit neither the principal nor the interest thereon was due.

There was a stipulation in the mortgage that until default the mortgagor should remain in possession of the property, and it was further agreed that in default of payment of either principal or interest as aforesaid, the mortgagee might sell

the mortgaged property at public sale upon the terms and conditions set forth in the mortgage.

After default had occurred in the payment of the semi-annual interest due on the mortgage debt, and after the institution of the replevin suit, the mortgagee advertised the property mentioned in the mortgage at public sale under foreclosure proceedings—the date of the sale being November 9, 1912. The mare "Flirt" was the last article sold at the sale, and the entire proceeds of sale were largely insufficient to pay the mortgage debt.

The case was, by agreement, tried before the Court without a jury, and the Court instructed itself, sitting as a jury, that, if it found the facts above recited, the plaintiff was entitled to recover. It rejected a prayer offered by the defendant that under the pleadings and evidence there was no legally sufficient evidence to show that the plaintiff was entitled to the possession of the mare at the time of the institution of the suit, and that, therefore, the verdict should be for the defendant. The exception is to the action of the Court on these prayers, and the legal question raised on the record is this: Was the plaintiff, before default, as against the purchaser from the mortgagor of the mare "Flirt", under the circumstances stated, entitled to the possession of the mare at the time of suing out the writ of replevin in this case?

It must be admitted that if the plaintiff was not entitled to the possession of the mare at the time of the institution of the suit he was not entitled to recover. In *Cumberland C. & I. Co.* v. *Tilghman,* 13 Md. 74, it was said that whoever is entitled to possession, whatever may be his title in other respects, may maintain or defeat the action of replevin; his right to success in the action of replevin depends *entirely* on his right to possession. See also *McKinzie* v. *B. & O. R. R. Co.,* 28 Md. 174; *McGuire* v. *Benoit,* 33 Md. 187; *Horsey* v. *Knowles,* 74 Md. 604.

In the absence of the stipulation contained in the mortgage that the mortgagor should retain possession until default,

the mortgagee would have had the right to the immediate possession of the property. It is said in *5th Elliott on Contracts,* sec. 4835, in treating of chattel mortgages, that: "The right of possession of mortgage chattels vests in the mortgagee immediately upon the execution of the mortgage if there be no express or implied stipulation in it to the contrary, whether the mortgage debt be due and payable or not. The mortgage vests the title to the chattel in the mortgagee, not an absolute title, indeed, but a present title, defeasible upon a condition subsequent. The right of possession follows as an incident to the right of property, unless the mortgage expressly or impliedly provides that the possession shall remain with the mortgagor until a breach of the condition. In the absence of such a stipulation the right of possession passes immediately to the mortgagee, and the possession of the mortgagor is the possession of the mortgagee. If there be such a stipulation, the right of possession follows the right of property upon a breach of the condition. When the mortgagee is entitled to the possession of the property, the mortgagor, having no right to the possession as against the mortgagee or his assigns, can not maintain an action of tort in the nature of trover for a conversion of the property. A reservation of possession in favor of the mortgagor only affects the possession according to the terms of the reservation, the title to the property in the meantime remaining in the mortgagee, who becomes entitled to possession immediately upon breach of the condition."

This statement agrees with the rule laid down by this Court in *Jamieson* v. *Bruce,* 6 G. & J. 72, where it is said that "the right of possession is always subject to any agreement which may be made in relation thereto, and mortgages do generally contain certain clauses giving the right of possession as against the mortgagee until forfeiture; but where the parties are entirely silent as regards the possession, the right thereto follows the legal estate, and vests in the mortgagee". Under the covenant contained in the mortgage, the mortgagor had

the undoubted right to retain possession until default, and, until that event occurred, the mortgagee had no right to deprive him of the possession. Had the property mortgaged been real estate, or chattels real, a purchaser from the mortgagor would have succeeded to his right of possession until default and with the further right to redeem. But in the case of the mortgage of personal property, such as that covered by this mortgage, a different rule should be applied, and the stipulation as to possession treated as a purely personal covenant between the parties. This rule would forbid the mortgagor, without the authority, or consent, or acquiescence of the mortgagee, under a stipulation of the character as that contained in this mortgage, to make an absolute sale and delivery of any part of the mortgaged property to a purchaser, because the possession thus given would not be according to the terms of the reservation. The fact that such sale and delivery were made before default would not affect the mortgagee's right to possession against the purchaser, or any one wrongfully in the possession of the property.

In *Dean* v. *Cushman,* 95 Me. 454, a chattel mortgage of certain hay contained a provision that the mortgagor might continue in possession of the hay until the conditions of payment were broken. The mortgagor sold and delivered the hay to a purchaser before condition broken. In passing upon the rights of the purchaser the Court said: "Under the mortgage, the mortgagor had the right of possession. He also had the right to redeem the hay from the mortgage. This right to redeem he could sell; and if he sold that, and only that, he might lawfully deliver possession of the property to the purchaser. *White* v. *Phelps,* 12 N. H. 382. But if he sold the entire property, the mortgagee's interest as well as his own, such a sale would be unlawful as against the mortgagee, and accompanied by the removal and delivery of the hay by the mortgagor, it would constitute a conversion on his part. *Millar* v. *Allen,* 10 R. I. 49 ; *White* v. *Phelps,* 12 N. H. 382 ; *Ashmead* v. *Kellogg,* 23 Conn. 70. Such a sale and conse-

quent conversion would put an end to his right of possession and immediately revest that right in the mortgagee. *Ripley* v. *Dolbier,* 18 Me. 382; *Grant* v. *King,* 14 Vt. 367; *Forbes* v. *Parker,* 16 Pick. 462; *Whitney* v. *Lowell,* 33 Me. 318."

In *Levi* v. *Legg & Bell,* 23 S. C. 282, the facts were that one Griffin had executed a mortgage to the plaintiff on certain personal property, including two mules, to secure the payment of a bond which became payable in December, 1883. This mortgage contained the usual stipulation that upon default in payment of the amount which it was intended to secure the mortgagee might enter upon the premises of the mortgagor and take possession of the mortgaged property, and that, in the meantime, the mortgagor might retain possession. Before the time fixed for the payment of the mortgage debt, the mules were sold by the sheriff under an execution against the mortgagor, and on the same day went into possession of the defendant, Legg & Bell, as purchasers from the party who had bid off the property at sheriff's sale. The suit was to recover possession of the mules, so sold at sheriff's sale, as the property of Griffin. The first question in the case was whether the plaintiff could maintain the action before the condition of the mortgage had been broken.

"The first question," said the Court, "it seems to us, is conclusively determined by the decisions of our own courts in the case of *Spriggs* v. *Camp,* 2 Speer, 181, recognized and affirmed in *Bellune* v. *Wallace,* 2 Rich. 80. These cases, which are binding as authority upon us, expressly decide that a mortgagee of chattels may maintain an action for a mortgaged chattel, even before condition broken, against a purchaser from the mortgagor, either directly or through the process of the Court. They rest upon the theory that a mortgage of personal property, unlike one of real estate, operates as a transfer of the title of the property, and that the stipulation usually found in mortgages of chattels, that the mortgagor may retain possession until condition broken, is personal to the mortgagor and can not be assigned or transferred to

another. Hence, whenever a mortgaged chattel is found in possession of another than the mortgagor, who alone can avail himself of the personal license to retain possession, the mortgagee, as the legal owner, may recover possession of such chattel."

The authorities, it is true, are not in harmony upon the question, but the rule stated in the decision referred to is based upon sound reasons growing out of the nature of the mortgaged property. In equity the mortgage is regarded as a mere security for the debt. The mortgagee may be satisfied to trust the property to a mortgagor with whom he is acquainted and in whom he has confidence, but would be entirely unwilling to allow it to be delivered to a stranger who might abuse or destroy it or place it entirely beyond his reach. With respect to a certain class of property, such, for instance, as works of art, the recognition of such rights as those contended for in this case might result most disastrously to the mortgagee. There is no element of estoppel in the case. The recording of the mortgage as against the purchaser is constructive notice of its existence and provisions; whether, in addition, he had actual notice does not appear. He did not testify in the case, and there is nothing to show that the mortgagee authorized or assented to the sale of the mare or induced the appellant to purchase. We accordingly hold that, under the facts appearing in this record, the sale and delivery of the mare to the appellant put an end to the mortgagor's right of possession, and, as against the appellant, the right was vested in the appellee at the time of the replevin suit was instituted. It follows that there was no error committed by the lower Court in its rulings upon the prayers, and the judgment must be affirmed.

*Judgment affirmed, with costs.*