[No. 1131. February 27, 1907.]

PETER KITCHEN, Appellee, v. GEORGE SCHUSTER, Appellant.

### SYLLABUS (BY THE COURT).

1. At common law the mortgagee in a chattel mortgage is entitled to the possession of the property mortgaged, but this has been changed in this Territory by C. L. 2365 which

in the absence of any agreement to the contrary gives the right of possession to the mortgagor until divested thereof by operation of law or by breach of the terms of the mortgage.

2. By C. L. Sec. 2370 the mortgagor is penally prohibited from selling the chattels mortgaged without the written consent of the mortgagee and this statutory provision is to be read into the mortgage as a condition thereof to the same extent as if embodied therein in so many words.

3. A breach of this statutory condition gives the mortgagee the right to sell the property under C. L. 2367 which provides that upon condition broken the mortgagee may proceed to sell the mortgaged property to satisfy the mortgage.

4. The right to sell includes the right to possess and thus the right to maintain replevin to recover the possession.

5. The right to recover possession in the presence of such a breach of condition is not affected by the fact that the mortgage is given to indemnify the mortgagee against a loss as a surety not yet incurred, this latter going to the ultimate use of the proceeds of sale rather than to the right of the possession of the property pending the outcome of the suretyship.

6. A chattel mortgage is good between the parties and against purchasers with notice notwithstanding it be unacknowledged and unrecorded.

7. Nor is such a mortgage covering neat cattle affected by the fact that it is not witnessed by two residents of the county as provided in C. L. Sec. 75, since this section applies to sales and not to mortgages.

8. Where the possession by the mortgagor of chattels mortgaged is in the first instance lawful, replevin will not lie for their detention except after demand or upon the mortgagor's actual conversion of such chattels.

9. A repudiation by the mortgagor of the mortgagee's right in the chattels evidenced by the exercise of dominion over them by him inconsistent with such right or some act done which has the effect of destroying or changing the quality of the chattels is a conversion of the chattels such as will obviate the necessity for demand as a condition to instituting replevin.

10. Where a mortgagor contrary to a penal statute sells the entire property in animals mortgaged and delivers possession of them to his vendee some of which are thereupon butchered by the latter, replevin against the vendee will lie without previous demand since such acts constitute conversion.

11. This court will not because of a contention as to the weight of the evidence set aside a judgment based upon the verdict of a jury, where the latter is sustained by legally adequate evidence and has been sustained by the trial court upon motion for new trial.

12.. A pre-existing liability as surety constitutes a valid consideration for a mortgage indemnifying the surety against such and this notwithstanding the surety may already have a mortgage for his protection.

13. Where the main issue of fact in the case was as to whether one purchasing mortgaged property from the mortgagor, such mortgage being unrecorded, bought with knowledge thereof, and where the testimony to show such knowledge was chiefly conversations alleged to have taken place between such purchaser and the witnesses, or in their presence between the purchaser and third parties, whereby it was sought to show notice conveyed to the purchaser on the one hand and the existence of knowledge of the mortgage by the purchaser on the other, it was competent to show that there was another mortgage on different cattle given by the mortgagor to the mortgagee to which the conversations testified to by the witness might have related.

Appeal from the District Court for McKinley County before IRA A. ABBOTT, Associate Justice. Reversed.

NEILL B. FIELD and FELIX H. LESTER, for Appellant.

A mortgagee who holds a mortgage only for the purpose of indemnity, has no such interest in mortgaged chattels as will permit him to meddle with them until such time as he shall have been damnified by having paid some portion of the debt for which he is bound as surety. C. L. 1897, secs. 2365, 2367, 2368; Chamberlain v. Railroad, 92 U. S. 306; Jones Chat. Mort., sec. 451; Bank v. Moore, 106 Cal. 673; Teal v. Walker, 111 U. S. 242; Wicker v.

Kitchen v. Schuster.

Hoppock, Wall. 99; Borum v. Reed, 73 Mo. 461; Shepard v. Shepard, 6 Conn, 36; Fordes v. McCoy, 20 N. W. 17; Learned v. Bishop, 42 Wis. 470; Jeffers v. Johnson, 21 N. J. L. 73; Hall v. Cushman, 16 N. H. 462; Osgood v. Osgood, 39 N. H. 209; Dock Lock Co. v. Mallery, 21 N. J. Eq. 93, 431; Rose v. Bevan, 10 Md. 466; Clagget v. Salmon, 5 Gill. & J. 314; Maish v. Bird, 59 Iowa 307; Maloney v. Nelson, 39 N. E. 82; Hampton v. Phippe, 108 U. S. 260.

Taking an instrument which could not be recorded because it was not acknowledged by the grantor, defied the requirement of the statute (C. L. 1897, sec. 2361); a violation of this statute, by the mortgagor does not entitle the mortgagee to maintain replevin for the mortgaged chattels, where the mortgage is silent as to the right of possession. Jones on Chattel Mortgages, secs. 457 and 601 et seq.; Gage v. Whittier, 17 N. H. 319; Walker v. Camp, 69 Iowa, 741; Abbotts v. Goodwin, 20 Me. 408; People v. Stone, 16 Calif. 316.

A bill of sale which is to operate as a chattel mortgage unless acknowledged and recorded, is not sufficient to vest the legal title in the vendee or mortgagee. Jones Chat. Mort., secs. 176-248; Compiled Laws 1884, sections 1587 and 1589; Compiled Laws of 1897, sections 75, 166, 2361; Gale & Farr v. Salas, 11 N. M. 211; Heisch v. Bell & Co., 11 N. M. 523; Territory v. Claypool & Luceras, 11 N. M. 568; Morrow v. State, 22 Texas App. 249; Williams v. State, 30 Texas App. 155; Buchanan v. State, 26 Texas App. 54; Hill v. Gillman, 39 N. H. 88; Pitkin v. Fletcher, 47 Iowa 53; Porter v. Dement, 35 Ill. 478; Frank v. Miner, 50 Ill. 444; McDowell v. Stewart, 83 Ill. 538; Jacoway v. Gault, 20 Ark. 490; Ester v. Cook, 22 Pick. 295; Kellogg v. Loomis, 16 Gray 48; Guras v. Porter, 118 Fed. Rep. 668; Machatte v. Wanless, 1 Col. 225; Wolcott v. Ashenfelter, 5 N. M. 442.

The bill of sale relied upon was void because not shown to be upon a sufficient consideration and not on its face importing a consideration. Hume v. Eagon, 83 Mo. App. 581.

"The question when it is sought to affect a purchas-

er with constructive notice, is not whether he had the means of obtaining, and, might by prudent caution, have obtained, the knowledge in question, but whether the not obtaining it was an act of gross or culpable negligence." Ware v. Lord Egmont, 4 DeGex M. & G. 473; Townsend v. Little, 109 U. S. 511; City v. Smelting Co., 63 Fed. 887; Wilson v. Miller & Beeson, 16 Iowa 115; Raymond v. Flavel, 40 Pac. 166; App. of Bugbee, 110 Pa. St. 338.

A purchaser for a valuable consideration, without notice of a prior equitable right, obtaining the legal estate at the time of his purchase, is entitled to priority in equity as well as at law. Townsend v. Little, 109 U. S. 511; Hume v. Eagon, 83 Mo. App. 581; Ware v. Lord Egmont, 4 DeGex M. & G. 473; City v. Smelting Co. 63 Fed. 887; Raymond v. Flavel, 40 Pacific 166; App. of Bugbee, 110 Pa. St. 338; Sawyer v. Pennell, 19 Me. 167; Grant v. National Bank, 97 U. S. 80.

"A purchaser of mortgaged property cannot be held liable for a conversion of it without a definite demand by the mortgagee, or a definite refusal to surrender it." Jones Chat. Mort. sec. 491; Lynch v. Beecher, 38 Conn. 493.

To maintain the action of replevin the plaintiff must be entitled to immediate possession of the chattels in controversy. The plaintiff at no time had such a right to the possession of the chattels in question as would justify a resort to the action of replevin. McKelvey v. Creevey, 72 Conn. 464; Laubenheimer v. McDermott, 6 Pac. 344; Pierce v. Stevens, 30 Me. 184; Kellogg v. Anderson, 40 Minn. 207; Dean v. Cushman, 95 Me. 454; Hathaway v. Brayman, 42 N. Y. 322; Holiday v. Lewis, 15 Mo. 282; Shevle v. Curdt, 56 Mo. 437; Curd v. Wunder, 5 Ohio St. 93; Camp v. Pollock, 64 N. W. 231; Woodside v. Adams, 40 N. J. L. 417.

If the plaintiff fails in his proof of any fact necessary to recover, the verdict should be directed against him. A motion to direct a verdict requires the examination of all the evidence and the determination of its sufficiency as a matter of law. Martin v. Railroad Co., 7 N. M. 158; Candelaria v. Railroad Co., 6 N. M. 266;

Bank v. Hickox, 5 N. M. 22; Heish v. Bell, 11 N. M. 523.

E. W. DOBSON, for Appellee.

The form of the chattel mortgage and the failure to record the same did not prevent appellee from recovering possession of said steers, provided appellant had knowledge of the existence of said mortgage. Compiled Laws 1897, secs. 2361, 3953, 3954, 3955, 3960.

When there is a conversion both by the mortgagor and the purchaser, the mortgagee is entitled to immediate possession of the mortgaged property or can sue either the mortgagor or the purchaser for such conversion. Jones on Chattel Mortgages, secs. 460-462.

Notice in the sense used in our statute includes, as well that which is actual, that which is implied and that which is constructive. Jones on Chattel Mortgages, secs. 308, 310, 312, 317, 318; Compiled Laws, 1897, sec. 3955; Schnevely v. Bishop, 55 Pac. 667; Conwell v. Jeger, 51 N. E. R. 733; Mendenyal v. Kretz, 44 Pac. 872; Roy & Co. v. Scott, Hartley & Co., 11 Wash. 339, 39 Pac. 679; Trust Co. v. Hendrickson, 25 Barb. 484; Chase v. Box Co., 11 Wash. 377, 35 Pac. 639; Darland v. Levins, 1 Wash. 582, 20 Pac. 309; Cowden v. Finney, 75 Pac. 765.

"A chattel mortgage is good against the mortgagor, though not in the form, nor accompanied by the affidavit, required by the statute and not filed for record." Deseret National Bank v. Kidman, 95 Am. St. R. 856, 867; Hawthorn v. Lewis, 23 Ill. 399.

If property under a chattel mortgage is sold by the mortgagor without authority of the mortgagee, the latter may either disavow the sale and retake the property, or he may ratify it and sue the mortgagor for the proceeds. Burke v. First National Bank, 87 Am. St. R. 447; Webber v. Ramsey, 43 Am. St. R. 435, notes; Waterman v. Matteson, 4 R. I. 539; Haskin v. Woodward, 45 Pa. St. 42; Mosher v. Vehue, 77 Me. 169; In re Bruce, 9 Ben. 236; Wells on Replevin, sec. 223.

No demand was necessary. Dean v. Cushman, 85 Am. St. R. 425, 50 Atl. 85; White v. Phelps, 12 N. H.

382; Millar v. Allen, 10 R. I. 49; Ashmead v. Kellogg, 23 Conn. 70; Ripley v. Dolbier, 18 Me. 382; Forbes v. Parker, 16 Pick. 462; Whitney v. Lowell, 33 Me. 318; Wells on Replevin, secs. 345 et seq.

A chattel mortgage vests the legal title to the property mortgaged in the mortgagee, subject to be revested in the mortgagor upon the performance of the condition, and in case of breach of condition the title becomes absolute at law in the mortgagee. Heyland v. Badger, 35 Cal. 404, 410.

Sale by the mortgagor not only of his own right of redemption but of appellee's interest in said property and a delivery of said property to the purchaser who had knowledge of the existence of said mortgage, was a breach of conditions of said instrument and entitled appellee to maintain his action to recover possession of said property. Compiled Laws, 1897, sec. 2370; 7 Cyc. 33; Hurst v. Bell, 72 Ala. 336; Swiney v. Gouty, 83 Mo. App. 549.

No particular form is essential to a chattel mortgage nor will mere informality defeat its purpose. Common v. Standland, 14 Am. St. R. 797.

### STATEMENT OF FACTS

This is a replevin action commenced July 23, 1904, by Kitchen against Schuster to recover possession of one hundred and three head of steers. Upon plea of not guilty being entered the cause was tried to a jury. The facts in the case are briefly as follows:

On May 5, 1904, one George E. Staring with the plaintiff Kitchen as accommodation maker, executed and delivered to one Morris a promissory note for $1700.00 payable on or before one year after date, bearing twelve per cent interest. In order to indemnify himself Kitchen took from Staring on June 4, 1904, a bill of sale covering the cattle in question. This bill of sale was conditioned as follows:

"This bill of sale executed for the purpose to secure said Peter Kitchen against any loss that may occur to him from the act of said Peter Kitchen endorsing a note

as surety for ($1700.00) dated May 5, '04. For the said George E. Staring and when said note is paid by the said George E. Staring or anyone for him, then this bill of sale is null and void, otherwise remain in full force."

There is a further provision that if the proceeds of the property should prove insufficient to pay the note, then Staring is to turn over other property sufficient to secure it, upon Kitchen's request. This instrument was not recorded until July 20, 1904. On July 8, 1904, Staring upon a consideration of $1775.00 made an absolute bill of sale for the property in question to the defendant George Schuster and one Eugene Schuster, a nephew. Upon the making of this bill of sale and the taking possession of the property by George Schuster, plaintiff brought replevin, claiming that the latter had legal notice of his bill of sale and had bought subject to it. There was considerable testimony upon this last point, but the jury found for the plaintiff under a charge of the court which among other things instructed them, that if the defendant in buying had actual or implied knowledge of the existence of the Kitchen bill of sale, and if the sale by Staring was without the written consent of Kitchen, their verdict should be for the plaintiff.

After the adverse verdict, defendant filed his motion for a new trial, which being overruled, an appeal was taken to this court.

OPINION OF THE COURT.

POPE, J.—(After stating the facts.) The assignments of error are principally to the effect that a verdict should upon the testimony have been directed for the defendant. Specifying the former, it is urged *first,* that no right of action accrued because the sale of the cattle by Staring to Schuster did not amount to a breach of any condition of the bill of sale; *second,* that no right to maintain replevin accrued on Kitchen's bill of sale until he was damnified by the payment of some part of the debt secured by it; *third,* that the bill of sale was void not having been acknowledged or recorded or witnessed as required

by law; *fourth,* that there was no demand before suit brought; and *fifth,* that the testimony was insufficient to carry to Schuster any legal notice of the Kitchen bill of sale.    There is also a sixth assignment of error dealing with an alleged error of the court in the rejection of certain testimony offered by the defendants.    These will be considered seriatim.

1.    It is argued first that no right of action accrued to Kitchen because the sale of the cattle by Staring to Schuster did not amount to a breach of the conditions of Kitchen's bill of sale.    This latter was in effect a mortgage to indemnify Kitchen for his suretyship.    At common law the mortgagee was entitled to immediate possession (Robinson v. Fitch, 26 Ohio St. 663) but by statute in this Territory (C. L., Sec. 2365) the mortgagor in the absence of any agreement to the contrary is entitled to retain possession until divested thereof by operation of law or by the terms of his contract.    There being no such agreement to the contrary the mortgagor was in the first instance therefore entitled to possession.    Under C. L. Sec. 2370, a sale of mortgaged property without the written consent of the prior mortgagee is prohibited and made penal.    This statute is to be read into the mortgage and is as much a part and condition thereof as if it had been said in terms therein that 'no sale should be made of the property hereby mortgaged.'    Being thus, by operation of law, a condition of the mortgage a breach of the condition brought the case within the provisions of  C.  L.  Sec.  2367,  which  provides:

"After condition broken, the mortgagee or his assignee may proceed to sell the mortgaged property, or so much thereof as shall be necessary to satisfy the mortgage and costs of sale; having first given notice of the time and place of sale, by written or printed handbills, posted up in at least four public places in the precinct in which the property is to be sold, at least ten days previous to the day of sale."

A sale constituted a breach of condition which the law read into the contract and upon such breach the plaintiff was authorized to "proceed to sell."    It is said, however,

that assuming a right to sell the statute gives no right to possess, which latter is, of course, the basis of replevin. We do not, however, concur in this view.

The grant of the power of sale carries with it all necessary incidental powers. Delivery is an important element in the sale of chattels, and in order to deliver possession the vendor must have it. The refinement of a right to make a sale without the right to possess in order to effectuate the sale does not appeal to us. Not only does this right of possession result as a matter of statute but independent thereof an unconditional sale has been held to work a forfeiture of right of possession bestowed by the mortgage upon the mortgagor, and thus to enable the mortgagee to maintain replevin or trover. Whitney v. Lowell, 33 Me. 318; Sanborn v. Colman, 6 N. H. 14; Ashmead v. Kellogg, 23 Conn. 70; Millar v. Allen, 10 R. I. 49; Forbes v. Parker, 16 Pick. 462; White v. Phelps, 12 N. H. 382. It is said, however, that independent of these considerations no right of action at law existed until Kitchen had been called to respond on his suretyship. It is urged that the sole remedy to the mortgagee upon the present facts was in equity, as by injunction or the appointment of a receiver to take charge of the property and to hold it or its proceeds to await the outcome of Kitchen's suretyship. This would doubtless be true were there no statute giving the mortgagee the right to take possession, and thus to protect himself. Buck v. Payne, 52 Miss. 271, 280; Webber v. Ramsey, 43 A. S. R. 429 *note*. But as we have seen above a breach of condition under our statute gives the right to possession and here there was such a breach. Nor do we consider the fact that loss had not accrued to Kitchen at the date of this suit of any relevancy. That position, in our judgment, overlooks the distinction that this is a suit by the mortgagee to recover possession from a vendee of his mortgagor, not a suit against the latter to recover the debt. The one goes to the proper preservation of the property or its value, the other to the application of the proceeds. Default in the principal condition that the money is to be paid on a certain date is not the only one which

gives the right of possession. There may be many others giving that right created by the contract, as, for instance, where the mortgagee is given the right to take possession and to sell in advance of maturity, in event the property is removed or levied upon or encumbered by the mortgagor or there is unreasonable depreciation in its value or where the mortgagee considers his claim in jeopardy or himself insecure. In cases such as these it has been without exception held that the right to take possession does not depend at all upon the maturity of the debt but may be exercised in advance thereof upon the existence of any one of the conditions. Among the numerous cases so holding are: Russell v. Butterfield, 21 Wend. 300; Wells v. Chapman, 59 Ia. 658; Cline v. Libby, 46 Wis. 123; Chadwick v. Lamb, 29 Barb. 518; Hoebner v. Koebke, 42 Wis. 319; Lewis v. D'Arcy, 71 Ill. 648; Welch v. Sackett, 12 Wis. 243; Bailey v. Godfrey, 54 Ill. 511; Frisbee v. Longworthy, 11 Wis. 376. Thus in Fox v. Kitton, 19 Ill. 318, followed in Bailey v. Godfrey, 54 Ill. 507, 531, it is said: "If default was made on the new security it is not doubted that the plaintiff could take possession and sell; equally so if at any time after the extension and new security given he should judge he was in danger, notwithstanding all his caution, of losing the debt thus attempted to be secured; it is so 'nominated in the bond'." So also is Prior v. White, 12 Ill. 262, it is said: "So long as the property is liable to be taken from the possession of the mortgagor, and transferred to that of a stranger, who might be disposed to remove it beyond the limits of the state, the security afforded by the mortgage, to say the least, must be extremely precarious. This is a contingency against which the party should have the right to protect himself. If he allows the mortgagor to retain possession of the goods, the parties may fix the limitation of that possession, which may as well depend upon the happening of an event, especially when that event may affect the stability of the security, as upon the lapse of a specified period of time.' And so in Ashley v. Wright, 19 O. S. 293, 294, it is said: "By the terms of the mortgage Colton had no right

Kitchen v. Schuster.

to secrete, remove or part with the possession of the property. An attempt to do so gave the mortgagee an immediate right of possession as fully as though his debt had become due."

This rule that the maturity of the obligation is not the sole consideration which determines the right to possesion is equally applicable to cases of suretyship. This is illustrated by Sidener v. Bible, 43 Ind. 430, where the mortgagee in an indemnity mortgage was held entitled to possession upon breach of a condition as to the mortgagor's attempting fraud, notwithstanding there had been no default, and the surety had not been called upon to pay; in Mattingly v. Paul, 88 Ind. 95, where the surety was awarded possession although he had paid nothing; and in Stonebaker v. Ford, 81 Mo. 532, where it is said that a surety *in the absence of a provision in the mortgage* authorizing it is not entitled to possession until he has been called upon to pay. As we have seen, however, there is in this case an express provision that on breach of condition as to the sale of the property the mortgagee might "proceed to sell", and consequently might take possession or sue for it as a preliminary to sale. We are as above pointed out concerned in this case simply with his right to possession in order to sell, not with the disposition of the proceeds of such sale. In the present case, therefore, we deem it unnecessary to decide whether such sale following such possession takes place in advance of the maturity of the obligation secured or after it. In Lewis v. D'Arcy, 71 Ill. 650, it was indicated that such sale would follow at once. On the other hand in Bank v. Taylor, 67 Ia. 576, influenced somewhat by the terms of the mortgage, it was held "that while the instrument authorized the holder to take possession of the mortgaged property before the maturity of the debt if he deemed himself insecure that did not empower him to sell it until after maturity." Nor are we concerned in the present case with the disposition of the proceeds of such sale except to indicate that these would of course in equity belong to the mortgagor's creditor in case he has not been

paid; or if he has been paid by the mortgagee then by way of reimbursement to the latter, with any balance either of proceeds or chattels, to the mortgagor.

A further assignment of error is that the mortgage from Staring to Kitchen is void because not acknowledged nor recorded, nor witnessed as provided in C. L. Sec. 75. By C. L. Sec. 2361 instruments having the effect of a mortgage on personal property are to be acknowledged, and recorded in the same manner as conveyances affecting real estate. C. L. Secs. 3955, 3960, declare that the effect of failure to record the latter is simply that the instrument shall not be valid as against purchasers and mortgagees in good faith without notice. The section last quoted thus provides in effect that such instrument shall be valid as between the parties to the instrument and those having actual notice thereof. We think, therefore, that the failure to record was not fatal to the instrument. Nor was the absence of an acknowledgment. The absence of an acknowledgment does not as between the parties or those with actual notice affect the validity of deeds. 1 A. & E. En. of Law (2nd. Ed.) 488; nor bills of sale, Cyc. 513-515; Heisch v. Bell, 12 N. M. 523; nor chattel mortgages, Jones on Chattel Mortgages, Secs. 237, 312.

Neither is the instrument invalid because not witnessed by two residents of the county as required in C. L. Sec. 75. This latter does not apply to chattel mortgages but to absolute sales. This being so, the lack of witnesses is immaterial. We find nothing in Gale v. Salas, 11 N. M. 523, nor Territory v. Claypool, 11 N. M. 568, contrary to these views.

A further objection urged to the maintenance of this suit is that there was no demand previous to the bringing of this suit. We accept as correctly stating the law upon this point the following from the syllabus of Woodside v. Adams, 40 N. J. L. 417, cited by appellant:

"There must be actual conversion or a refusal to deliver on demand which is evidence of a conversion before the detention becomes unlawful. To constitute an

Kitchen v. Schuster.

actual conversion of goods, there must be some repudiation by the defendant of the owner's right or some exercise of dominion over them by him inconsistent with such right or some act done which has tht effect of destroying or changing the quality of the chattel."

In this suit Staring had, contrary to a penal statute, sold the cattle outright and absolutely and had delivered possession to defendant and the latter had butchered some of them. This in our judgment was under all tha authorities a conversion and relieved the plaintiff of the necessity of a demand. Jones on Chattel Mortgages, Secs. 443, 460, 462; LaFayette Bank v. Metcalf, 40 Mo. App. 501; Whitney v. Lowell, 33 Me. 318; Partridge v. Swazey, 46 Me. 414; Nordman v. Wickens, 28 Ark. 191; White v. Phelps, 12 N. H. 382; Pease v. Odenkircher, 42 Conn. 415; Millar v. Allen, 10 R. I. 49; Sanborn v. Coleman, 6 N. H. 14; Mattingly v. Paul, 88 Ind. 95; Grant v. King, 14 Vt. 368; Roberts v. Norris, 67 Ind. 386; Ripley v. Dolbier, 18 Me. 382; Threshing Co. v. Campbell, 14 Ore. 460.

It is earnestly contended however that the judgment in this case is shocking to the moral sense in that the finding which it necessarily carries that Schuster bought with actual notice of the prior Kitchen mortgage is without substantial evidence to support it. This being a case at law, with a trial by jury and a verdict sustained by the judgment of the trial court upon motion for a new trial, our sole inquiry is whether there was sufficient evidence produced on the trial by the successful side to justify the verdict. The testimony for the plaintiff it is claimed by him tends to show that Schuster had both actual and constructive notice of the mortgage. The defendant denies that it shows either.

The proper rule governing constructive notice is in our judgment stated in United States v. Detroit Co., 200 U. S. 321, 323, where it is said: "When a person has not actual notice he ought not to be treated as if he had notice unless the circumstances are such as to enable the

court to say, not only that he might have acquired, but also that he ought to have acquired it but for his gross negligence in the conduct of the business in question. The question then, when it is sought to affect a purchaser with constructive notice, is not whether he had means of obtaining the knowledge in question, but whether not obtaining was an act of gross or culpable negligence."

The record shows that Staring applied to Schuster to sell him the cattle in controversy about June 21, 1904, but on account of the suspicions of the nephew who was interested with him in the trade, Schuster postponed the trade, meanwhile writing to one Kuchenbecker enquiring as to whether there was a mortgage on the cattle. The reply of the latter dated June 24th, states that Staring had given a mortgage on certain cattle in order to raise money to buy other cattle "purchased in Arizona" but adds that the writer does not know whether the cattle he purchased after he obtained the money were included in the mortgage. He adds that in his opinion Schuster would run no risk in buying as Staring no doubt "will likely use the money you pay him to pay off the mortgage here." Schuster thereafter purchased the cattle. We very much doubt if this letter was any evidence of notice to Schuster. Even if it could be assumed that the cattle mentioned as purchased in Arizona referred to the cattle here involved Kuchenbecker's statement simply disclaims knowledge on the subject. Were the judgment below dependent upon this testimony alone we would find it hard to sustain, under the rule in United States v. Detroit Co. *supra*. In addition to this, however, there was the testimony of at least two witnesses as to alleged admissions of actual notice by Schuster. The witness Chisum testified that on July 9th., which was within a day or two after the payment of the purchase money by Schuster and the delivery of the cattle to him, the latter enquired in the presence of witness, of one Bean, who was working for Staring, "whether the latter had brought those papers back from Gallup, the papers that Kitchen had on the cattle," and Bean thereupon replied that "he had not got back yet but would be back and bring the papers and fix it up all right". He further testified that in the fol-

lowing January Schuster told him that "he had no show to lose his case because Mr. Kitchen didn't have his papers on record". Schuster in his testimony denied that the conversation was as testified to by Chisum and said that all he asked Mr. Bean on that occasion was whether Mr. Staring had come back from Gallup and that Mr. Bean said no.

The witness Roberts testified to a conversation with Schuster in March 1905 when the latter stated in talking about the present case that "he knew that Mr. Kitchen had a mortgage on those cattle that he (Schuster) bought from Staring, but that Mr. Staring promised to come down and pay that mortgage off and get the papers". Schuster in his testimony admitted a conversation with Roberts but denied that in it he told Roberts that Staring had promised he would come down and pay off the mortgage to Kitchen. Another witness Raymus testified that in a conversation with Schuster on July 17 or 18, 1904, the latter stated that he paid Staring the money and Staring said that he was coming to town to pay the money over to Mr. Kitchen. This conversation was not denied by Schuster, except in so far as it involved his statement that he never knew that Kitchen had any interest in these cattle at the date of this conversation.

We consider this testimony sufficient to warrant the jury in the belief that Schuster had actual knowledge of the Kitchen mortgage and that he bought from Staring relying upon the suggestion of his friend Kuchenbecker that Staring would probably use the money received from him to pay the mortgage off. The jury evidently believed that Schuster had trusted Staring to his peril and the latter having disappeared, Schuster should bear the burden.

It is finally said, however, that the court erred in refusing to admit evidence of a mortgage on other cattle made to Kitchen by Staring on May 5, 1904, to indemnify him against the same Morris indebtedness. It is urged that this was admissible for two reasons: first as establishing want of consideration for the later mortgage securing the same indebtedness being the mortgage forming the basis of this suit, and second in explanation of the al-

leged admission of Schuster to Chisum, Roberts and Ray-
mus last referred to.

We are of the opinion that the testimony was inadmis-
sible for the purpose first named. The fact that Kit-
chen had taken a mortgage to indemnify against a lia-
bility did not preclude his taking a further mortgage of
indemnity, nor could the existence of the former
render the latter lacking in consideration. The lia-
bility for the debt constituted a sufficient considera-
tion for each mortgage. Laubenheimer v. McDermott,
5 Mont. 512; Jones on Chattel Mortgages, Secs. 81, 82.
The second ground upon which the admissibility of this
mortgage is claimed is a more serious one. Appellant
claims that had it been introduced in evidence it would
have detracted from the force of the alleged admissions by
Schuster to or in the presence of Chisum, Roberts and
Raymus since it would have tended to show that in mak-
ing or hearing any statements Schuster had in mind a mort-
gage on what were known as the home cattle and not on
the cattle sold to him by Staring. The objection made
against the admission of this mortgage on the trial was
that it was never delivered or recorded and was signed by
only one of two parties whose names appear therein. The
first of these objections was clearly untenable for
Kitchen himself testified that the mortgage was de-
livered to him at the time he signed the Morris
note, and the other grounds of objection were equally
ill-founded in view of the purpose for which the mortgage
was offered. Indeed upon the present hearing the objection
principally urged is that the mortgage was properly re-
fused as immaterial. If this be true of course the rul-
ing of the court should still be upheld since a wrong rea-
son for a right conclusion will not affect the latter. We are
of the opinion, however, that the testimony offered was
material and competent. The present judgment as we
have seen must rely for its support upon the alleged ad-
mission of Schuster to three parties that he knew of the
existence of the mortgage in question. He testified that
he knew of the home cattle mortgage but that he did
not know of the other. Proof that there was a home cattle

mortgage would throw light directly upon the testimony in that it would enable the jury to say whether even if he made the statements ascribed to him by Chisum, Roberts and Raymus or heard statements made as they testified to, these had reference to the mortgage in question or an entirely different mortgage and entirely different cattle. The testimony of Raymus will illustrate this. He said, as we have seen, that Schuster told him that Staring said he was coming to town to pay the money over to Kitchen. The jury had before them only one mortgage, that now in question; if this was the only one given by Staring to Kitchen then this statement of Staring necessarily referred to that and carried to Schuster notice of it. But suppose there was another mortgage? Staring might still have made this statement and yet Schuster have understood it as referring to property and a mortgage not here involved. As this case turns upon notice and rests largely upon conversations showing such notice we think the jury was entitled to view these in the light of all the surrounding facts and one of these in our opinion very highly relevant, was the fact that another mortgage existed, to which the conversations and references might have been attributed or at least understood by Schuster to be attributable.

We are also of opinion that proof of this other mortgage was admissible in explanation of the Kuchenbecker letter.

For the reason last stated we are of opinion that the judgment should be reversed, and it is so ordered.

### SYLLABUS (BY THE COURT).

