437 P.2d 1000

**WESTERN STATES COLLECTION COM-
PANY, a corporation, Plain-
tiff-Appellee,**

v.

**Charles MARABLE, Defendant-Appellant.**

No. 8417.

Supreme Court of New Mexico.

Feb. 12, 1968.

Walter K. Martinez, Grants, for appel-
lant.

Strong, Butler & Colberg, Albuquerque,
for appellee.

## OPINION

MOISE, Justice.

Plaintiff-appellee sought in this action to replevy a certain Hobbs dump trailer which defendant-appellant had in his possession.

The facts surrounding the transaction are generally not in controversy. They disclose that defendant did certain work, including hauling for Grants Lumber and Box Company, hereinafter referred to as "Box Company" which was a corporation owned by one C. Cliff Amos and his family. Although the exact date does not appear, some time before August, 1961, defendant arranged to purchase the dump trailer here in issue from Hobbs Trailer Division of Fruehauf for $500.00 cash and a "dump bed" to be traded in for a credit of $700.00. Not having the $500.00, defendant arranged for the same to be paid by Box Company or Mr. Amos. Upon this being done, possession of the dump trailer

was delivered to defendant, but the contract papers (it does not appear if they were a chattel mortgage or conditional sales contract) were executed showing Box Company to be the purchaser and responsible for the monthly payments. Mr. Amos testified that it was understood that after six or eight payments had been made the contract was to be changed over so as to make defendant responsible as purchaser for the accruing payments, but this was never done.

On June 28, 1965, Box Company was in possession of a duplicate certificate of title on the Hobbs dump trailer. Box Company was shown therein as owner, and the certificate disclosed a lien in favor of Hobbs Trailer Division of Fruehauf. On that day Box Company, being indebted to Stan Galloway d/b/a Stan Galloway Agency in the amount of $4,454.68 on account of insurance premiums owing by Box Company to Galloway, purportedly sold the Hobbs dump trailer to Galloway for the amount of the indebtedness and assigned the title certificate to him by endorsement on it and delivery of the certificate to him. The account thereupon was shown as paid in full by Galloway.

On the same day, June 28, 1965, Galloway assigned to plaintiff "all right, title and interest for the purpose of a replevin" of the Hobbs dump trailer, and plaintiff instituted this suit two days later.

In addition to the above facts, the record discloses that on the books of Box Company a charge had been made to an account in the name of defendant for the $500.00 advanced as a down payment, and for each monthly installment payment as it was made to Hobbs Trailer Division. Defendant made two payments in cash to Box Company to reimburse it for payments made by it and received credit on the account for these payments. On the same account he was also given credit for amounts accruing to him for work and hauling, and was charged with amounts paid to him. A dispute exists between defendant and Box Company as to whether defendant is indebted to Box Company, or Box Company to defendant, and a separate suit is pending wherein this is the issue.

The facts outlined above are generally uncontroverted. There is, however, a disagreement as to whether, at the time he agreed to purchase the dump trailer by taking an assignment of the certificate of title in payment of Box Company's account, viz., June 28, 1965, Galloway knew defendant had possession of the dump trailer under some claim of right. Mr. Stoll, operator of plaintiff corporation, testified that the matter of obtaining possession through replevin, or otherwise, had been under discussion between himself and Galloway for approximately two weeks before that date.

After trial before the court, the issues were decided in favor of plaintiff-appellee, and the following pertinent findings made:

"II. That on or about the 28th day of June, 1965, GRANTS LUMBER AND BOX COMPANY, INC. had legal and equitable title to that certain 1960 Hobbs Dump Trailer, Serial No. 953–372, and held a Certificate of Title from the New Mexico Motor Vehicle Department evidencing the same."

"VI. That on June 28, 1965, CLIFF AMOS executed the duplicate Certificate of Title transferring and assigning the Dump Trailer to STAN GALLOWAY AGENCY in consideration for the premiums due and owing on that date."

"VIII. That STAN GALLOWAY d/b/a STAN GALLOWAY AGENCY, accepted in good faith title covering the said Dump Trailer without actual or implied knowledge of any adverse claims of the Defendant CHARLES MARABLE or any other person, association, or corporation accepting (sic) that of the outstanding obligation set forth on the Certificate of Title executed by CLIFF AMOS, President of the GRANTS LUMBER AND BOX COMPANY, INC.

"IX. That on the 29th day of June, 1965 [the assignment is dated June 28, 1965], STAN GALLOWAY assigned his

right, title and interest in the Hobbs Dump Trailer to the Plaintiff WESTERN STATES COLLECTION COMPANY, INC."

"XI. That on the 28th day of June, 1965, the Defendant CHARLES MARABLE was in physical possession of the said Hobbs Dump Trailer."

"XIII. That plaintiff was entitled to the immediate possession of the Hobbs Dump Trailer in the physical possession of the Defendant CHARLES MARABLE."

and concluded:

"III. That one STAN GALLOWAY d/b/a STAN GALLOWAY AGENCY was a bona fide purchaser for value without notice of any right, title or interest of the Defendant at the time of the transfer of the said Trailer from CLIFF AMOS to STAN GALLOWAY."

"VI. That by virtue of the assignments from STAN GALLOWAY to the Plaintiff WESTERN STATES COLLECTION COMPANY, INC., the Plaintiff is entitled to the immediate possession of the Hobbs Dump Trailer free of any claims, right, title or interest of the Defendant.

"VII. That the Plaintiff is entitled to judgment of Attorneys fees for the services of its attorneys herein in the sum of $250.00."

From the judgment entered pursuant to the decision of the court, defendant has appealed. His principal attack is directed at findings II, VIII, IX and XIII, because not supported by substantial evidence. He also complains of the court's failure to adopt his requested findings which set forth his view of the facts as established by the proof, as follows:

"14. On June 28, 1965 when the title to the said dump trailer was purportedly transferred to Stan Galloway Agency, Stan Galloway, owner of such agency, had known of the fact that Defendant Charles Marable had possession of said dump trailer.

"15. On June 28, 1965 at the time of the purported transfer of title from Grants Lumber and Box Company to Stan Galloway Agency, Stan Galloway, owner of such agency, had known of the fact that Defendant Charles Marable made an adverse claim to the said dump trailer and that it would be necessary to bring a replevin action to gain possession of said dump trailer.

"16. For approximately two weeks before the purported transfer of the certificate of title to Stan Galloway Agency, Stan Galloway, the owner thereof, had conversations and consultations with E. Stoll, President of Plaintiff, Western States Collection Agency, in which conversations and consultations they discussed at length the necessity of bringing replevin action to gain possession of said dump trailer and the costs thereof."

"18. At no time material hereto did Stan Galloway make inquiry of Defendant Charles Marable as to the nature and extent of his interest in the said dump trailer."

In our opinion the case turns on whether Galloway was correctly determined to be a bona fide purchaser for value without notice of defendant's claimed interest in the dump trailer. Plaintiff, as assignee of Galloway's interest simply for the purpose of bringing this action, stands in the shoes of its grantor and has no greater rights than he had. From the record before us we are unable to conclude that Box Company had a right to immediate possession superior to defendant. It is clear, however, from the uncontroverted facts set out above, that Marable had some equitable interest in the dump trailer, and that Finding II to the contrary lacks substantial support in the evidence. Only if Galloway, plaintiff's assignor, can be classed as a bona fide purchaser for value without notice, as found by the court, can the judgment of the trial court be upheld.

Defendant places his principal reliance on the holding of this court in Dunne v. Petterman, 52 N.M. 284, 197 P.2d 618

(1948), from which we quote the following:

"A person cannot be a bona fide purchaser who has brought to his attention facts which should have put him to an inquiry, which if pursued with due diligence, would have led to a knowledge of the infirmities appearing upon the face of the instrument involved in the transaction. To constitute that good faith which will protect a vendee in a transaction of the nature of the one before us, there must not only be an absence of actual knowledge of the vendor's fraud, but an absence of that which, in law, amounts to notice. If the vendee has knowledge of such facts as would lead an ordinarily prudent man, using ordinary caution, to make further inquiries, which if made, would have disclosed the vendor's fraudulent act, he will be deemed to have notice of such fraud. * * *"

In that case the buyer of a house trailer was held not to be a bona fide purchaser when he had seen the bill of sale to seller and it clearly disclosed erasures and insertions in different ink, and handwriting different from other portions of the bill of sale. Compare Taylor v. Hanchett Oil Co., 37 N.M. 606, 27 P.2d 59 (1933); Kitchen v. Schuster, 14 N.M. 164, 89 P. 261 (1907).

■ In the instant case, Galloway knew of defendant's possession. Whether or not he knew that defendant made some claim or right to retain possession—and there is some dispute concerning this point—can it be said in the circumstances that he was not under a duty to make inquiry as to the nature of defendant's claim? No case has been called to our attention, nor has our research disclosed one where an assignee of title to property has been held to be a bona fide purchaser when possession of the property sold or assigned was in a third person. The importance of possession is amply demonstrated by our holding in Clovis Finance Company v. Sides, 72 N.M. 17, 380 P.2d 173 (1963). Also see 2 Williston, Sales § 316 at 252 (Rev.Ed.1948).

■ To our minds, it would seem to be self-evident that anyone who purchases specific personal property, knowing the possession is in someone other than the seller, would act at his peril if he failed to inquire by what right that other person had possession. The law seems to support this view. See 77 C.J.S. Sales § 289f(2), p. 1091; Continental Credit Corporation v. Norman, 303 S.W.2d 449 (Tex.Civ.App. 1957); Ex Parte Dort, 238 S.C. 506, 121 S.E.2d 1 (1961).

■ What we have said above should particularly be true where, as in New Mexico, certificate of title is only prima facie evidence of ownership, § 64–3–10, N.M.S.A. 1953, and true ownership may be shown by other proof. Clovis Finance Company v. Sides, supra. Galloway could not close his eyes to the fact defendant had possession even though a duplicate certificate of title from Box Company was received. Neither could he be said to have acted as a reasonable man when he did not make inquiry of defendant as to whether he claimed an interest, or as to the basis for his possession. See Annot., 18 A.L.R.2d 813, 833 (1951).

Although the transaction between Box Company and Galloway occurred in 1965, after the adoption of the Uniform Commercial Code (Ch. 50A, N.M.S.A.1953), no claim has been advanced by either party that any of its provisions would be controlling. Accordingly, we have not considered whether or not any of the rules advanced above are in any way altered by that legislation, or if any different result might be reached thereunder.

Because of the disposition made on the point discussed, it is not necessary for us to consider the other points argued by defendant.

Having determined that the court erred in concluding that plaintiff was entitled to recover possession because invested with the rights of a bona fide purchaser, the cause must be reversed and remanded with

instructions to discharge the writ and enter such judgment against plaintiff and the sureties on the bond as shall be proper. It is so ordered.

NOBLE and CARMODY, JJ., concur.